**56 ASSOCIATES, a Rhode Island Partnership By and Through its General Partner, Joseph R. PAOLINO, Sr., Plaintiffs.**

v.

**Andrew FRIEBAND and Benjamin Woodward, Defendants.**

No. 98–302T.

United States District Court, D. Rhode Island.

March 30, 2000.

ciates (Associates), for fire damage to Associates' building allegedly caused by Andrew Frieband, Associates' tenant. The action was commenced in state court; but Frieband removed it to this Court.

Frieband moved for summary judgment on the ground that, under the so-called "Sutton doctrine" a building owner's fire insurer may not recover from a tenant for fire damage to the building allegedly caused by the tenant's negligence because the tenant, in effect, is a co-insured under the owner's policy.[1] Pursuant to 28 U.S.C. § 636(b)(1)(B), a magistrate judge has recommended that Frieband's motion be granted.

Because Frieband is not an insured under the Associates' policy, and, because I find it reasonably clear that Rhode Island would not adopt the "Sutton doctrine," the Magistrate Judge's recommendation is rejected and Frieband's motion for summary judgment is denied.

### Background

In 1996, Associates owned an apartment house in the City of Providence. The building was covered by a fire insurance policy issued to Associates by ProvWash. Associates was the only insured named in the policy.

On February 5, 1996, the building was damaged by fire. ProvWash alleges that the fire was caused by negligence on the part of Frieband, a month-to-month tenant in the building. Frieband's lease did not contain any provision regarding his liability for damage to the premises or the obligation of either party to obtain insurance. Nor did Associates and Frieband ever discuss these matters.

Pursuant to the terms of its policy, ProvWash paid the loss incurred by Associates in the amount of $135,656.57. ProvWash then commenced this action to recover that amount from Frieband.

Ralph T. Della Rosa, John G. Hines, Hines and Patz, Inc., Providence, RI, for plaintiffs.

Faith A. LaSalle, Zizik, LaSalle & Powers, P.C., Providence, RI, for Andrew Frieband, defendants.

Mark T. Nugent, Morrison, Mahoney & Miller, Providence, RI, for Benjamin Woodward, defendants.

### MEMORANDUM AND ORDER

TORRES, Chief Judge.

### Introduction

Providence Washington Insurance Company (ProvWash) brought this subrogation action in the name of its insured, 56 Asso-

---

1. This Court previously accepted the Magistrate Judge's recommendation that co-defendant Benjamin Woodward's motion for summary judgment be granted on the ground that evidence of his negligence was lacking.

As already noted, the Magistrate Judge has recommended that Frieband's motion for summary judgment be granted on the ground that, under the "Sutton doctrine," Frieband should be treated as an insured under Associates' policy; and, therefore, ProvWash cannot maintain a negligence action against Frieband for a loss covered by that policy. *Farr Man & Co. v. M/V Rozita,* 903 F.2d 871, 877–878 (1st Cir. 1990); *Safeco Insur. Co. v. Capri,* 101 Nev. 429, 705 P.2d 659, 660 (1985); *Alaska Insur. v. RCA Alaska Communications,* 623 P.2d 1216, 1217 (Alaska 1981).

ProvWash objects to the Magistrate Judge's recommendation and argues that Frieband's motion for summary judgment should be denied because Frieband is not and should not be considered an insured under Associates' policy; and, under Rhode Island law, a tenant may be held liable for damage caused by its negligence. Alternatively, ProvWash contends that whether Rhode Island would adopt the "Sutton doctrine" is a question that should be certified to the Rhode Island Supreme Court.

### Discussion

### I. *Certification*

The first issue that must be addressed is whether the application of the "Sutton doctrine" is a question that should be certified to the Rhode Island Supreme Court. As frequently is the case, answering that question presents many of the difficulties encountered in trying to determine whether the chicken or the egg came first.

■ Rule 6 of the Rules of the Supreme Court of Rhode Island provides for certification of questions of Rhode Island law which may be determinative of a cause of action and as to which there is no controlling precedent. However, the First Circuit has stated that, although certifica-. tion may be available, "it is inappropriate to use such a procedure when the course state courts would take is reasonably clear." *Bi–Rite Enterprises v. Bruce*

*Miner Co., Inc.,* 757 F.2d 440, 443 n. 3 (1st Cir.1985).

■ The mere fact that the Rhode Island Supreme Court has not had occasion to address an issue does not, by itself, require certification. A "federal court may attempt to predict how [a] state's highest court would rule on [an] issue in a pending federal case." *Lieberman–Sack v. HCHP–NE,* 882 F.Supp. 249, 254 (D.R.I. 1995). Such predictions may be based upon existing state law or the "better reasoned authorities" from other jurisdictions. *See id.*

As already noted, the Rhode Island Supreme Court has not had occasion to consider the "Sutton doctrine." Consequently, in order to determine whether the course that it would follow is "reasonably clear," this Court must examine existing Rhode Island law and the "better reasoned authorities" on the subject.

### II. *Standard of Review*

An objection to a Magistrate Judge's recommendation regarding a matter referred pursuant to 28 U.S.C. § 636(b)(1)(B), requires a *de novo* determination by the Court. 28 U.S.C. § 636(b)(1) (1999).

Summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor. *See United States v. One Parcel of Real Property With Bldgs., Appurtenances, And Improvements, Known as Plat 20, Lot 17, Great Harbor Neck, New Shoreham, R.I.,* 960 F.2d 200, 204 (1st Cir.1992).

### III. *The Sutton Doctrine*

In *Sutton v. Jondahl,* 532 P.2d 478, 482 (Ct.App.Okla.1975), the Oklahoma Court of Appeals held that, absent an express agreement to the contrary, a tenant should be deemed a co-insured under a landlord's fire insurance policy; and therefore, the insurer cannot bring a subrogation action against the tenant for a fire loss allegedly caused by the tenant's negligence. *Sutton* seems to rest on the dubious premise that a tenant has an "insurable ... possessory interest" in the building itself, and on the assumption that in negotiating rental payments, the landlord and tenant impliedly agree that a portion of the rent is to be used to purchase insurance.

A number of other courts have prohibited subrogation suits by landlords' insurers against tenants whose negligence allegedly caused losses. *See Peterson v. Silva,* 428 Mass. 751, 704 N.E.2d 1163 (1999); *Continental Insur. v. Kennerson,* 661 So.2d 325 (Fla.Dist.Ct.App.1995); *USAA Casualty Insur. v. Brown,* 206 A.D.2d 470, 614 N.Y.S.2d 571 (1994); *GNS Partnership v. Fullmer,* 873 P.2d 1157 (Utah Ct.App. 1994); *United Fire & Casualty. Co. v. Bruggeman,* 505 N.W.2d 87 (Minn.Ct.App. 1993); *Community Credit Union v. Homelvig,* 487 N.W.2d 602 (N.D.1992); *Tate v. Trialco Scrap,* 745 F.Supp. 458 (M.D.Tenn.1989); *Safeco Insur. v. Weisgerber,* 115 Idaho 428, 767 P.2d 271 (1989); *Cascade Trailer Ct. v. Beeson, et al.,* 50 Wash.App. 678, 749 P.2d 761 (1988); *New Hampshire Insur. Group v. Labombard,* 155 Mich.App. 369, 399 N.W.2d 527 (1986); *Safeco Insur. Co. v. Capri,* 101 Nev. 429, 705 P.2d 659 (1985); *Parsons Mfg. Corp. v. Superior Court,* 156 Cal.App.3d 1151, 203 Cal.Rptr. 419 (1984); *Windsor at Seven Oaks v. Kelly,* 113 Ill.App.3d 978, 69 Ill. Dec. 791, 448 N.E.2d 251 (1983); and *Alaska Insur. v. RCA Alaska Communications,* 623 P.2d 1216 (Alaska 1981).

However, while many of these decisions cite *Sutton,* relatively few adopt *Sutton*'s rationale. For example, in some cases, subrogation was not allowed because of determinations that, for various reasons, the landlord was precluded from suing the tenant; and, therefore, an action by the insurer, as landlord's subrogee, also was barred. *See, e.g., Alaska Insur. Co.,* 623 P.2d at 1217; *Page v. Scott,* 263 Ark. 684, 567 S.W.2d 101, 103 (1978).

Moreover, a number of courts have rejected the "Sutton doctrine" and permitted subrogation actions against tenants who are not named insureds for damage caused by the tenant's negligence. *See Osborne v. Chapman,* 574 N.W.2d 64, 68 (Minn.1998) (tenants are not co-insureds of landlord and whether insurer may proceed against tenant depends on whether landlord agreed to maintain insurance for tenant's benefit or to look solely to insurance for damaged caused by tenant's negligence); *Neubauer v. Hostetter,* 485 N.W.2d 87, 89 (Iowa 1992) (tenant's possessory interest in property was not automatically insured under the landlord's policy and absent any agreement by the landlord to insure the tenant's interest in the property, landlord, and its insurer as subrogee, have right to proceed against tenant for damage caused by tenant's negligence); *Britton v. Wooten,* 817 S.W.2d 443, 445 (Ky.1991) (subrogation proper where lease did not require landlord to provide insurance coverage for the benefit of plaintiff); *U.S. Fidelity & Guar. Co. v. Let's Frame It,* 759 P.2d 819, 823 (Colo.Ct.App.1988) (neither requirement that tenant redeliver premises in good order upon termination of lease, nor requirement that tenant pay as additional rent a pro-rata share of landlord's operating expenses, including the cost of property damage insurance, was sufficient to prevent landlord's insurer, as subrogee to landlord's claim, to recover for damage due to tenant's negligence); *Page v. Scott,* 263 Ark. 684, 567 S.W.2d 101, 104 (1978) (suit by insurer to recover for loss caused by tenant's negligence not blocked unless insurance was obtained for the benefit of both landlord and tenant).

One court that initially appeared to follow *Sutton*, later disavowed *Sutton*, saying: "[a]lthough in Weisgerber this Court referred to cases in other jurisdictions which stand for the broad proposition that, absent an agreement to the contrary, a tenant is a coinsured of the landlord, ... we did not expressly adopt those holdings ... the proper analysis should be to look to the landlord's and tenant's intentions as shown by [the] particular lease agreement and the facts and surrounding circumstances to determine whether the risk of loss for damage by fire should fall on the landlord or the tenant." *Bannock Building Co. v. Sahlberg*, 126 Idaho 545, 887 P.2d 1052, 1055 (1994).

There are several reasons why the decisions rejecting *Sutton* represent the "better reasoned authorities" on the subject.

First, an insurance policy is a contract between an insurer and its insured. *Bush v. Nationwide Mutual Insur. Co.*, 448 A.2d 782, 784 (R.I.1982). Like any other contract, its terms are governed by the provisions of the policy itself. *Textron, Inc. v. Aetna Casualty and Surety Co.*, 638 A.2d 537, 539 (R.I.1994). If those terms are clear and unambiguous, they must be applied as written. *Malo v. Aetna Casualty and Surety Co.*, 459 A.2d 954, 956 (R.I. 1983). Thus, a court is not free to rewrite a policy or read provisions into it in order to achieve what the court subjectively may believe to be a desirable result.

Although a fire insurance policy may name, as insureds, persons other than the policy owner, courts have no authority to insert the names of additional insureds.

Nor, as *Sutton* suggests, does the mere fact that an individual may have an insurable interest in property make that individual an insured under a policy of insurance covering the property.[2] That individual also must be a named insured or must purchase insurance covering his interest. *See generally Neubauer v.*

*Hostetter*, 485 N.W.2d 87, 89–90 (Iowa 1992) ("To the extent that defendant and her husband also had a property interest in the dwelling, it was not automatically insured under the landlord's policy.").

■ Since an insurance policy is a contract between the insurer and its insured, the tenant cannot become an insured unless the insurer agrees and the policy so provides. Accordingly, a landlord's use of part of the rent collected from a tenant in order to pay premiums does not make the tenant an insured under the policy. Similarly, notwithstanding *Sutton* and its progeny (*e.g.*, *Peterson v. Silva*, 428 Mass. 751, 704 N.E.2d 1163, 1166 (1999)) ("The reasonable expectation of the defendants, and all tenants, is that their rent includes the landlord's cost for fire insurance, and that any damage to the property from fire is covered by that insurance."); *Cascade Trailer*, 749 P.2d at 766 ("[T]he issue concerns the parties' reasonable expectations. Where the landlord has secured fire insurance covering the leased premises, the tenant can reasonably expect the insurance to cover him as well, unless the parties have specifically agreed otherwise."), a tenant's expectation that the landlord will obtain insurance covering the tenant also is insufficient to make the tenant an insured. In such cases, the landlord's failure to obtain the insurance might render it liable to the tenant for losses that would have been covered by the policy; or, it might bar the landlord from suing the tenant for what would have been insured losses incurred by the landlord. However, neither the tenant's expectations nor the unilateral action of the landlord giving rise to those expectations can make a tenant an insured under a policy issued by the landlord's insurer.

Furthermore, if one accepts *Sutton*'s proposition that a tenant becomes a coinsured under a landlord's policy, the ten-

---

**2.** In this case, it is questionable whether Frieband had an insurable interest in the *building* covered by the policy as opposed to an insur- able interest in occupancy and the contents of his apartment.

ant would be entitled to a portion of any proceeds payable under the policy. However, it is difficult to envision how those proceeds would be apportioned, especially since the amount payable is determined by the repair or replacement cost of the building itself rather than any occupancy interest of tenants who are not even named in the policy. The solution suggested by one court is to treat the tenant as a co-insured for the purpose of determining amenability to a subrogation suit, but not for the purpose of determining entitlement to the policy proceeds. *Capri*, 705 P.2d at 661 ("[T]he tenant is, *for the limited purpose of defeating an insurer's subrogation claim*, an implied coinsured of the landlord.") (emphasis added). However, there does not appear to be any principled basis for such inconsistent treatment. The wish to achieve a desired result cannot justify arbitrary distinctions or override well established principles of contract law.

In short, the "Sutton doctrine" is inconsistent with the better reasoned cases that reject the notion that a tenant automatically becomes a co-insured under a landlord's insurance policy.

█ The "Sutton doctrine" also would be a radical departure from well-established principles of Rhode Island law. Under Rhode Island law, an insurance policy is construed like any other contract. *Textron, Inc.*, 638 A.2d at 539. If the terms of the policy are unambiguous, a court must apply them as written and may not read into the policy provisions that are not there. *See Malo*, 459 A.2d at 956.

Moreover, Rhode Island law recognizes the right of an insurer that pays a loss incurred by its insured to bring a subrogation action against a third party responsible for the loss. *Lombardi v. Merchants Mutual Insur. Co.*, 429 A.2d 1290, 1291 (R.I.1981).

Finally, under Rhode Island law, tenants, like any other persons, generally may be held responsible for the consequences of their negligence. Thus the Residential Landlord and Tenant Act, R.I.G.L. § 34–18–1, *et. seq.*, prohibits tenants from negligently damaging the leased premises, R.I.G.L. § 34–18–24(6), and expressly provides that it "shall not be construed to limit the right of the landlord to recover in an action in tort damages resulting from a fire or other casualty damage caused either negligently or deliberately by the tenant." R.I.G.L. § 34–18–33.

For all of these reasons, it is reasonably clear that Rhode Island would not adopt the "Sutton doctrine", and would instead look to the terms of the lease between the landlord and tenant to see if the insurer, stepping into the landlord's shoes, may maintain a subrogation action against the tenant for the tenant's negligence.

### III. The Facts of this Case

In this case, Associates' policy did not name Frieband as an insured, a co-insured, or an additional insured. Thus, Frieband cannot be deemed an insured and ProvWash is not precluded from maintaining this action against him. However, since this is a subrogation suit, ProvWash can only bring it if Associates could bring it, a determination that turns on the terms of the lease and applicable provisions of state law.

The parties agree that the lease does not address the question of fire insurance or fire damage, and that Associates and Frieband never discussed the subject. Consequently, there is no basis for inferring any promise by Associates that it would obtain insurance protecting Frieband against liability or that it would not seek to recover from Frieband for any losses caused by Frieband's negligence. Nor does Rhode Island law bar Associates from suing Frieband because, as already noted, the Residential Landlord and Tenant Act permits a landlord to recover from its tenant for damage to the property caused by the tenant's negligence.

Since neither the lease between Associates and Frieband, nor Rhode Island law, prevents Associates from seeking recovery

from Frieband, ProvWash, as Associates' subrogee, is free to maintain this action.

## CONCLUSION

For all of the foregoing reasons, that portion of the Magistrate Judge's Report recommending that Frieband's motion for summary judgment be granted is rejected and Defendant Frieband's motion for summary judgment is DENIED.

IT IS SO ORDERED,